An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-866-2

Filed 15 July 2026

Cumberland County, No. 21CR052924-250

STATE OF NORTH CAROLINA

v.

ANGELA BENITA PHILLIPS, Defendant.

Appeal by Defendant from judgment entered 11 May 2022 by Judge James F. Ammons, Jr. in Cumberland County Superior Court. Originally heard in the Court of Appeals on 26 April 2023. Affirmed in part and vacated and remanded in part by *State v. Phillips*, 386 N.C. 513, 905 S.E.2d 23 (2024).

> *Attorney General Jeff Jackson, by Assistant Attorney General John P. Barkley & Hyrun J. Hemingway, for the State.*
>
> *Reece & Reece, by Mary McCullers Reece, for Defendant-Appellant.*

CARPENTER, Judge.

This case comes to us on remand from the North Carolina Supreme Court, which affirmed in part, vacated in part, and remanded with instructions to reconsider whether the trial court's instructional error prejudiced Angela Benita Phillips ("Defendant"). After careful review, we conclude that Defendant was prejudiced by

the trial court's erroneous supplementation of its jury instructions on the Castle Doctrine, which distorted the burden-shifting framework and confused the jury to an extent that undermines confidence in the result. Accordingly, we vacate the trial court's judgment and remand for a new trial.

## I. Factual & Procedural Background

The facts underlying the jury instruction and conviction are detailed in our prior appellate opinions. *See State v. Phillips*, 290 N.C. App. 660, 893 S.E.2d. 256 (2023), *aff'd in part and vacated and remanded in part*, *State v. Phillips*, 386 N.C. 513, 905 S.E.2d 23 (2024). The facts and procedure pertinent to the issue on remand are restated below.

On 4 April 2021, Latonya Dunlap, who was "kind of tipsy" and "getting loud," approached a neighbor's house and told him that the neighborhood "got a problem" with her. Dunlap then "made a beeline over to [Defendant's] house," walking "with an attitude," and banged on Defendant's front door because she believed Defendant had complained about Dunlap to their landlord. Defendant told Dunlap to leave "three or four times," but Dunlap "held her ground." Defendant slapped Dunlap and, after seeing Dunlap look at a man across the street and "streak[] over to jump on [Defendant]," fired multiple shots at her. One of the shots struck Dunlap, causing injuries that left her permanently disabled. A grand jury in Cumberland County indicted Defendant for assault with a deadly weapon with intent to kill inflicting serious injury.

At trial, Defendant raised the affirmative defenses of self-defense and defense of habitation, commonly referred to as the Castle Doctrine. Defendant requested the appropriate pattern jury instructions. At the charge conference, the trial court remarked that "self defense is—*whatever the form the legislature puts it*—self-defense is to preserve life." (emphasis added). For the jury, the trial court then altered the pattern jury instruction to include an instruction that Defendant did "not have the right to use excessive force" and that she was only permitted to use "such force as reasonably appeared necessary to the defendant under the circumstances to protect [herself] from death or great bodily harm." A juror asked the trial court to repeat that part of the instruction. The trial court responded, "It is confusing. Let me finish and then I'll go back and do it again. Well, let me just start over." The trial court then re-instructed the jury on the prohibition of excessive force, but it did not provide the jury with a special verdict form.

The jury determined that Defendant did not act with the intent to kill but found her guilty of a lesser-included offense, assault with a deadly weapon inflicting serious injury. The trial court sentenced Defendant to twenty-five to forty-two months incarceration and ordered restitution of $25,000. Defendant gave oral notice of appeal in open court.

On appeal, this Court concluded that the trial court erred by instructing the jury on the prohibition of excessive force and that the error prejudiced Defendant. *Phillips*, 290 N.C. App. at 665, 893 S.E.2d at 261. Specifically, we determined that

"[b]ecause the trial court's instruction was both erroneous and confusing, there is a reasonable possibility that the jury would have reached a different result if it received a proper instruction." *Id.* at 665, 893 S.E.2d at 261 (citation omitted). The State timely appealed.

The North Carolina Supreme Court largely affirmed our opinion. *Phillips*, 386 N.C. at 528, 905 S.E.2d at 34. Specifically, it agreed that "the jury should not have considered the proportionality of defendant's force unless the jury found that either (1) defendant did not qualify to invoke the castle doctrine, or (2) defendant qualified, but the State properly rebutted the presumption of reasonable fear." *Id.* at 527–28, 905 S.E.2d at 33. The Supreme Court concluded, however, that "confus[ing] the jury . . . standing alone[] is insufficient" to demonstrate that Defendant was prejudiced by the trial court's error. *Id.* at 528, 905 S.E.2d at 34. On that issue, it vacated in part and remanded for us to "properly analyze whether defendant was prejudiced by [the] error." *Id.* at 528, 905 S.E.2d at 34.

## II. Analysis

Under the Castle Doctrine, "when a person who is free from fault in bringing on a difficulty, is attacked in his own home or on his own premises, the law imposes on him no duty to retreat before he can justify his fighting in self defense, regardless of the character of the assault[.]" *State v. Johnson*, 261 N.C. 727, 729, 136 S.E.2d 84, 86 (1964). In those circumstances, the occupant can "repel force with force, and . . . increase his force, so as not only to resist, but also to overcome the assault

- 4 -

and secure himself from all harm." *Id.* at 730, 136 S.E.2d at 86. As a result, "[t]he castle doctrine in North Carolina recognizes that unlawful intruders create an inherently dangerous situation in certain specified circumstances, and lawful occupants are thus given the benefit of the doubt in qualifying use of force scenarios." *State v. Allison*, 388 N.C. 664, 670, 923 S.E.2d 485, 491 (2025).

" 'Where competent evidence of self-defense is presented at trial, the defendant is entitled to an instruction on this defense, as it is a substantial and essential feature of the case . . . .' " *State v. Lee*, 370 N.C. 671, 674, 811 S.E.2d 563, 566 (2018) (quoting *State v. Morgan*, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986)); *see Allison*, 388 N.C. at 674, 923 S.E.2d at 493 (" 'A defendant entitled to *any* self-defense instruction is entitled to a *complete* self-defense instruction . . . .' ") (quoting *State v. Coley*, 375 N.C. 156, 159–60, 846 S.E.2d 455, 458 (2020)) (emphasis in original). " 'Instructions that provide jurors with a clear decision tree are critical for a jury to be able to accurately determine whether the presumptions provided by [section] 14-51.2 have been rebutted. A jury must intentionally and methodically determine whether that presumption has been rebutted.' " *Allison*, 388 N.C. at 674, 923 S.E.2d at 493 (quoting *State v. Copley*, 386 N.C. 111, 126–27, 900 S.E.2d 904, 915 (2024) (Barringer, J., concurring)).

Thus, "when a defendant asserts the castle doctrine defense at trial, the jury must first determine whether the defendant is entitled to the presumption as set forth in section 14-51.2(b)." *Phillips*, 386 N.C. at 525, 905 S.E.2d at 32. Under the statute,

"[t]he lawful occupant of a home[] . . . is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another . . . ." N.C. Gen. Stat. § 14-51.2(b) (2025). "If the jury finds that the defendant is not entitled to the presumption, the castle doctrine statute does not apply and the jury must determine the defendant's culpability under section 14-51.3, the general self-defense statute." *Phillips*, 386 N.C. at 525, 905 S.E.2d at 32. "Alternatively, if the jury finds that the defendant is entitled to the presumption, it must then determine whether the State has rebutted the presumption . . . ." *Id.* at 525, 905 S.E.2d at 32. Then, "[i]f the jury finds that the State has rebutted the presumption, the jury must determine whether the defendant's use of force was proportional." *Id.* at 525, 905 S.E.2d at 32.

"It is the duty of the court to explain and apply the law to the evidence in the case and set the minds of the jury at rest in respect to the principles of law which should guide them in arriving at a verdict." *State v. Hedgepeth*, 230 N.C. 33, 36, 51 S.E.2d 914, 916 (1949); *see State v. Parker*, 277 N.C. App. 531, 549, 860 S.E.2d 21, 34 (2021) ("[I]t is the province of the trial court to instruct the jury on matters of law, while the jury should be left free to reach its own conclusions on matters of fact.") (citation omitted). Therefore, a trial court must not "invade the province of the jury, which is to assess the credibility of the witnesses and determine the facts from the evidence adduced." *State v. Rhodes*, 290 N.C. 16, 24, 224 S.E.2d 631, 636 (1976) (citations omitted); *see State v. McLean*, 17 N.C. App. 629, 632, 195 S.E.2d 336, 338 (1973) ("[I]t is error for the trial judge to intimate that controverted facts have or have

not been established . . . .") (citations omitted). Accordingly, the trial court "should not at any time give an instruction, even in the form of a contention, which presents an erroneous view of the law or an incorrect application thereof." *Hedgepeth*, 230 N.C. at 36, 51 S.E.2d at 916.

Indeed, "[a] jury is presumed to follow the instructions given by the trial court." *State v. Chambers*, 387 N.C. 521, 527, 915 S.E.2d 96, 100 (2025) (citation omitted). Thus, a defendant appealing from judgment "is required not only to show that a challenged jury instruction was erroneous, but also that such error prejudiced the defendant." *State v. Richardson*, 270 N.C. App. 149, 152, 838 S.E.2d 470, 473 (2020) (citing N.C. Gen. Stat. § 15A-1442(4)(d) (2019)). "A defendant is prejudiced . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2025). In conducting this analysis, it is our duty to "ensure that there is no 'reasonable possibility' that the jury convicted the defendant on the basis of . . . an unsupported legal theory." *State v. Malachi*, 371 N.C. 719, 738, 821 S.E.2d 407, 421 (2018).

For example, if "the jury instructions resolved the factual issue in dispute, there is a reasonable possibility that, had the erroneous jury instruction not been given, a different result would have occurred." *State v. Castaneda*, 196 N.C. App. 109, 118, 674 S.E.2d 707, 713 (2009). Yet, " '[i]t is not the role of the appellate courts . . . to create an appeal for an appellant[.]' " *State v. Collington*, 375 N.C. 401, 405,

847 S.E.2d 691, 695 (2020) (quoting *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005)). Thus, if it is unclear whether the jury relied on an erroneous or alternative theory in the jury instructions, this Court "must order a new trial." *State v. Pakulski*, 319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987). This uncertainty is only enhanced following a conviction without a special verdict form that delineates the jury's chosen theory of guilt. *See State v. Lewis*, 321 N.C. 42, 50, 361 S.E.2d 728, 733 (1987).

Here, after careful review of the record and our Supreme Court's direction, we remain convinced that the trial court's instructional error prejudiced Defendant. *See Pakulski*, 319 N.C. at 574, 356 S.E.2d at 326; N.C. Gen. Stat. § 15A-1443(a). Specifically, the instruction erroneously permitted the jury to determine that Defendant's force used against Dunlap was excessive under the circumstances without assessing whether the State rebutted the presumption of reasonable fear, upending the proper burden-shifting framework. *See Phillips*, 386 N.C. at 525, 905 S.E.2d at 32; *Hedgepeth*, 230 N.C. at 36, 51 S.E.2d at 916. Had the jury not been instructed to consider the proportionality of Defendant's defensive force, there is a reasonable possibility that the State would not have rebutted the Castle Doctrine presumption, leading to Defendant's acquittal. *See Malachi*, 371 N.C. at 738, 821 S.E.2d at 421; *see also Phillips*, 386 N.C. at 527, 905 S.E.2d at 33 ("We therefore agree with the Court of Appeals' statement below that '[u]nder the Castle Doctrine,

excessive force is impossible unless the State rebuts the Castle Doctrine presumption . . . .' ") (quoting *Phillips*, 290 N.C. App. at 664, 893 S.E.2d at 256).

Further, the trial court's excessive force instruction strongly implied that the State had rebutted the presumption of reasonable fear as a matter of law, which ultimately prevented the jury from deciding a disputed question of fact. *See Castaneda*, 196 N.C. App. at 118, 674 S.E.2d at 713; *Rhodes*, 290 N.C. at 24, 224 S.E.2d at 636. The erroneous decision tree provided by the trial court's instructions misguided and evidently confused the jury on a critical aspect of the case, *see Allison*, 388 N.C. at 674, 923 S.E.2d at 493, failing to set the jury's mind at rest regarding the proportionality of Defendant's defensive force, *see Hedgepeth*, 230 N.C. at 36, 51 S.E.2d at 916. The trial court recognized as much after a juror's request to repeat the instruction. Moreover, without a special verdict form, the record provides no indication that the jury understood or adhered to the proper burden-shifting framework. *See Lewis*, 321 N.C. at 50, 361 S.E.2d at 733.

Accordingly, there is a reasonable possibility that, but for the trial court's error in instructing the jury to consider the proportionality of Defendant's defensive force, the jury would have returned a different verdict. *See* N.C. Gen. Stat. § 15A-1443(a); *Pakulski*, 319 N.C. at 574, 356 S.E.2d at 326. The trial court's erroneous jury instruction, therefore, was prejudicial. *See Castaneda*, 196 N.C. App. at 118, 674 S.E.2d at 713; N.C. Gen. Stat. § 15A-1443(a). Defendant is entitled to a new trial where the jury is correctly instructed on the Castle Doctrine and should be provided

with a special verdict form to safely navigate its decision tree. *See Allison*, 388 N.C. at 674, 923 S.E.2d at 493.

## III. Conclusion

When a jury is improperly instructed on the Castle Doctrine, "the defendant faces the intolerable prospect of conviction based on conduct our General Assembly has deemed lawful and justified." *See id.* at 679, 923 S.E.2d at 496. We therefore conclude the trial court prejudicially erred because its excessive force instruction circumvented the burden-shifting framework of the Castle Doctrine and prevented the jury from deciding a disputed question of fact—whether the State properly rebutted the presumption of reasonable fear. *See Phillips*, 386 N.C. at 527–28, 905 S.E.2d at 33. The trial court also did not provide a special verdict form, which might have mitigated the prejudicial effect of the error. Accordingly, there is a reasonable possibility that the jury would have reached a different result, entitling Defendant to a new trial.

NEW TRIAL.

Judge STADING concurs.

Judge HAMPSON concurs in the result.

Report per Rule 30(e).